780 S.W.2d 84 (1989)
STATE of Missouri, ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Plaintiff-Appellant,
v.
James KEELEY and Pepsi-Cola Bottling Company of St. Louis, Inc., Defendant-Respondent.
No. 55804.
Missouri Court of Appeals, Eastern District, Division Six.
October 17, 1989.
Motion for Rehearing and/or Transfer Denied November 15, 1989.
*85 Paul R. Sterrett, Rich Tiemeyer, Kirkwood, for plaintiff-appellant.
Joseph H. Mueller, Robyn Greifzu Fox, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for defendant-respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied November 15, 1989.
HAMILTON, Judge.
Appellant, Missouri Highway and Transportation Commission (hereinafter Commission), appeals the order of the trial court that sustained the motion for directed verdict filed at the close of the Commission's case by Respondent, Pepsi-Cola Bottling Company of St. Louis, Inc., (hereinafter Pepsi), and that dismissed the Commission's cause of action without prejudice for failure to prosecute.
In 1979, the Commission filed suit against Pepsi and James Keeley (hereinafter Keeley), a maintenance supervisor employed by Pepsi in September, 1977. The first amended petition alleged that the negligence of Keeley caused damage to the Commission's bridge on Route W in Jefferson County, Missouri. It further alleged that, at the time of the accident, Keeley was acting as the agent, servant and employee of Pepsi and was acting within the course and scope of his employment. Pepsi moved for summary judgment on the basis that no agency relationship existed between Keeley and itself. The trial court granted summary judgment. The Commission then filed an appeal which this Court dismissed for lack of a final judgment because the claim against Keeley remained pending in Circuit Court. State Hwy. Comm'n v. Keeley, 696 S.W.2d 865, 867 (Mo.App.1985). Thereafter, the trial court entered a default judgment against Keeley in the amount of $1,069,566.70.[1]
The Commission again appealed the trial court's summary judgment in favor of Pepsi. This Court reversed and remanded. We held that a presumption arose that Keeley was acting within the scope of his employment by Pepsi at the time of the alleged accident because, when the accident occurred, Keeley was employed by Pepsi and the car operated by Keeley was owned by Pepsi. State Hwy. Comm'n v. Keeley, 715 S.W.2d 338, 340 (Mo.App.1986). The record, however, contained no facts to either *86 confirm or rebut this presumption. We stated that
[w]hile the record does not show a business purpose for the operation of the vehicle at 4:30 in the morning, neither does it show such a purpose did not exist. Without such evidence, the existence or nonexistence of the agency relationship between Keeley and Pepsi remains a matter of speculation; and the presumption of the relationship of agency, created by the fact Keeley was an employee of Pepsi, is not destroyed.
At the subsequent trial, the Commission presented the testimony of Trooper Frank Autry who had responded to the scene of the accident at 4:38 a.m. on September 17, 1977. In the course of the trooper's investigation, Keeley admitted that he was the driver of the car when the accident occurred.
The Commission also presented evidence that created a presumption of agency. Its witness, Leonard Richardson (hereinafter Richardson), testified on direct examination that he was employed as a vice-president by Pepsi in September, 1977. By reason of that employment, Pepsi had assigned him a company car, a 1974 Chevrolet Impala. After work on Friday, September 16, 1977, Richardson, at his home in Eureka, released the car to Keeley in order that Keeley could perform a tune-up on the car at his home in Pacific and return it to Richardson the next day. Keeley's position at Pepsi, which was under the supervision of Richardson, did not involve performing tune-ups on cars. Keeley had previously performed tune-ups on other cars for Richardson. Neither Pepsi nor Richardson paid Keeley for his labor, although Pepsi was to reimburse Richardson for parts. Neither Richardson nor Keeley discussed Keeley's use of the car for personal purposes.
On cross-examination, Richardson testified that he released the car to Keeley for the sole purpose of performing a tune-up, which was undertaken by Keeley as a personal favor to Richardson; that at no time before the date of the accident, on September 17, 1977, had he ever given the company car to Keeley for personal use or purpose; that Keeley was neither to be paid by Pepsi for performing the tune-up nor to keep time records on it; that he was to pay Keeley for any needed parts and Pepsi would reimburse him for those parts; that he gave no direction to Keeley on behalf of Pepsi to drive the company car on company business at 4 a.m. on September 17, 1977; that, to his knowledge, no one at Pepsi gave Keeley any direction or order to drive that company car at 4 a.m. on September 17, 1977; that Keeley's duties as maintenance supervisor for Pepsi included no maintenance of automobiles or of other vehicles.
The trial court sustained Pepsi's objection to testimony of the Commission's witness on the issue of damages, Allen Laffoon, division engineer of bridges with the Missouri Highway and Transportation Department. Through Laffoon's testimony, the Commission sought to prove its damages by measuring the replacement and repair value of the bridge rather than the difference between the value of the bridge immediately before and immediately after the damage occurred. The trial court did, however, permit the Commission to make an offer of proof. The Commission declined, however, to offer evidence under an alternate theory of damages.
At the close of the Commission's evidence, Pepsi moved for directed verdict. The trial court granted Pepsi's motion and, in the alternative, dismissed the Commission's case for failure to prosecute by reason of the Commission's failure to offer proof under an alternate theory of damages. Following denial of its motion for new trial, the Commission appealed.
On appeal, the Commission asserts that the trial court erred in directing a verdict for Pepsi because (1) the evidence showed Keeley was an agent, servant, or employee of Pepsi at the time of the accident; (2) the evidence showed that an act or omission of Pepsi proximately caused damage to the Commission; (3) the evidence showed the Commission sustained damages as a result of the acts of Keeley imputed to Pepsi; (4) under the law, the pleadings and the evidence, the Commission proved a submissible *87 case against Pepsi. It also contends that the Commission's failure to offer an alternative theory of damages provided no basis for dismissal for failure to prosecute.
When reviewing a verdict directed against a plaintiff, we must review the evidence most favorable to plaintiff and disregard defendant's evidence except insofar as it supports plaintiff's case. Sinopole v. Morris, 743 S.W.2d 81, 85 (Mo.App. 1987). Our review is not, however, limited to isolated facts, but includes all of the evidence adduced in plaintiff's behalf. Duke v. Missouri Pac. R.R. Co., 303 S.W.2d 613, 616 (Mo.1957). Moreover, we need not disregard all evidence unfavorable to plaintiff; we must disregard only defendant's evidence unfavorable to plaintiff. Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, 690 S.W.2d 144, 147 (Mo.App. 1985). Although defendant's evidence is rejected unless it aids plaintiff's case, plaintiff still bears the burden to remove its case "from mere conjecture and to establish [its] case by substantial evidence having probative value or by reasonable inferences which can be drawn from [its] evidence." Gordon v. Oidtman, 692 S.W.2d 349, 352 (Mo.App.1985).
The threshold issue presented in this appeal is whether Keeley was, at the time of the accident, an agent, servant, or employee of Pepsi. To establish that relationship, the Commission created a presumption of agency by adducing that, when the accident occurred, Pepsi employed Keeley and Pepsi owned the car operated by Keeley.[2]See Chandler v. New Moon Homes, Inc., 418 S.W.2d 130, 133 (Mo. banc 1967). Proof of these facts, however, creates and constitutes merely "the bare minimum for a procedural presumption that the operator was acting within the scope of his employment at the time; and if there is no evidence for the plaintiff other than this bare minimum, the presumption disappears upon defendant's introducing substantial controverting evidence." Snead v. Sentlinger, 327 S.W.2d 202, 205 (Mo.1959).
In the case at bar, the Commission's own evidence destroyed the presumption of agency. Richardson released the car to Keeley after working hours at his home in Eureka in order for Keeley to tune it at home and return it the following day, a Saturday. Keeley's work for Pepsi did not include performing tune-ups on cars. Moreover, Keeley was asked by Richardson to tune the car but was to receive no compensation for his labor. The accident occurred at approximately 4 a.m. on a Saturday.
The foregoing facts rebut the presumption of agency by establishing that Keeley's activities during the period in question were outside the scope of his duties as maintenance supervisor for Pepsi; that neither Richardson nor Pepsi compensated Keeley for any activities during this period; that Keeley obtained the car after working hours and away from his work location; and that Keeley was to tune it on a Saturday at his home. Substantial evidence of actual facts concerning Keeley's activities with respect to the car destroy the procedural presumption of agency. Rosser v. Standard Milling Co., 312 S.W.2d 106, 111 (Mo.1958).
The record also contains further evidence destructive of this presumption. To determine whether a presumption of agency has "take[n] flight upon the appearance in evidence of the real facts," this court may consider evidence adduced by the defendant and contained in plaintiff's case. Guthrie v. Holmes, 198 S.W. 854, 858, 855-6 (Mo. banc 1917) (deposition taken by defendant read into evidence by plaintiff).
We may therefore review the evidence elicited by Pepsi on its cross-examination of the Commission's witnesses. That evidence demonstrates that Richardson gave Keeley no instruction on his or on Pepsi's behalf to use the car on company business at 4 a.m. on September 17, 1977; that, to Richardson's knowledge, no one at Pepsi directed Keeley to drive the car at 4 a.m. on that date; that Richardson released the *88 company car to Keeley for the sole purpose of tuning it; that the tune-up was to be performed by Keeley as a personal favor to Richardson; that neither Pepsi nor Richardson would compensate Keeley for the tune-up and Keeley was to keep no time records concerning the tune-up; that prior to the date of the accident, Richardson had never given Keeley the company car for his personal use or purpose.
The facts contained in the record before us provide substantial evidence to rebut the bare procedural presumption relied upon by the Commission. Once that presumption is destroyed, no evidence remains to support the Commission's allegation of agency. The Commission has thus failed to support its theory of recovery that Keeley was the agent of Pepsi. Therefore, the trial court properly granted a directed verdict. Sinopole, 743 S.W.2d at 85.
In view of our disposition of this issue, we need not address the Commission's other points on appeal. The judgment of the trial court is affirmed.
GRIMM, P.J., and SIMEONE, Senior Judge, concur.
NOTES
[1] Following the accident, Keeley returned to work at Pepsi for a short period. He then moved to Arizona. Attempts by the Commission and by Pepsi to locate him for discovery or trial have failed.
[2] Ownership of the car by Pepsi was established through interrogatories and not contested at trial.