**LaFARGE NORTH AMERICA, INC., Respondent,**

v.

**Danieal MILLER, Appellant.**

**No. WD 74424.**

Missouri Court of Appeals, Western District.

Aug. 7, 2012.

Michael W. Bartolacci, St. Louis, MO, for respondent.

Bradley H. Lockenvitz, Columbia, MO and James M. Garrett, Kirksville, MO, for appellant.

Before Division One: JAMES M. SMART, JR., Presiding Judge, LISA WHITE HARDWICK, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Danieal H. Miller ("Miller"), appeals the circuit court's judgment granting summary judgment to Lafarge North America, Inc. ("Lafarge") based on Lafarge's claim against Miller on a credit account in arrears. For the reasons explained below, we reverse the judgment against Miller and remand.

### Factual Background

Miller is the sole member of Tiger Ready Mix LLC ("Tiger"), a Limited Liability Company in the cement business in Columbia, Missouri. Miller gave an employee of Tiger a rubber signature stamp bearing only his name, "Danieal H. Miller," for use in conducting Tiger's business.

On October 2, 2007, Stephanie Deason ("Deason"), a Tiger employee, used the signature stamp to execute a Credit Application and Agreement ("Agreement") from Lafarge. She completed the form at Tiger's office and faxed it back to Lafarge. The Agreement stated that Tiger was the "Applicant," and that the "Principal" was "Daniel H. Miller; Owner." *Id.* The Agreement was entered into so that Tiger could buy bags of raw cement mix from Lafarge on credit. The Agreement also contained the following guaranty clause:

IN CONSIDERATION FOR SALES TO APPLICANT ON OPEN ACCOUNT, THE UNDERSIGNED INDIVIDUALLY AND UNCONDITIONALLY GUARANTEES TO LAFARGE AND ITS SUCCESSORS, THE PROMPT PAYMENT OF SAID ACCOUNT IF NOT PAID WHEN DUE BY APPLICANT. APPLICANT AND THE UNDERSIGNED FURTHER

AGREE TO REIMBURSE LAFARGE FOR ALL ATTORNEY'S FEES, COURT COSTS, AND OTHER CHARGES, IF THIS ACCOUNT SHOULD BE PLACED IN THE HANDS OF AN ATTORNEY FOR COLLECTION.

*Id.*

Pursuant to this Agreement, Lafarge began selling raw cement mix to Tiger. After approximately ten months, Tiger stopped paying Lafarge's invoices. Lafarge brought this action on fourteen unpaid invoices dated from August 27, 2008 through November 19, 2008, totaling $187,614.42.

On June 16, 2009, Lafarge filed suit against Tiger in its corporate capacity and against Miller individually, in the Circuit Court of Boone County. Lafarge asserted that Tiger owed the money due, and that "by signing the Credit Application, Miller absolutely and unconditionally personally guaranteed cash payment to Lafarge for any present and future amount that Defendant Tiger owes or may incur to Lafarge, including interest, attorneys' fees and costs to collect on any unpaid obligation."

Lafarge filed a Motion for Summary Judgment. On September 1, 2011, the trial court granted summary judgment in favor of Lafarge and against Tiger and Miller in the amount of $187,614.42. Miller now appeals.[1]

### Standard of Review

The Missouri Supreme Court has outlined our applicable standard of review on a motion for summary judgment:

"The standard of review of appeals from summary judgment is essentially de novo." *State ex rel. Koster v. Olive,* 282 S.W.3d 842, 846 (Mo. banc 2009). This Court "will review the record in the light most favorable to the party against whom judgment was entered." *Id.* "Summary judgment shall be entered if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Id., quoting Rule* 74.04(c)(6). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. banc 1993).

*Hargis v. JLB Corp.,* 357 S.W.3d 574, 577 (Mo. banc 2011).

### Analysis

In his sole point on appeal, Miller argues that the "trial court erred in entering summary judgment against him *personally* on a company debt by the use of a signature stamp used by Tiger Ready Mix LLC's agent that had no authority to use the same for that purpose and that as a result, there was a genuine issue of material fact in controversy to bar the trial court from entering judgment in favor of Lafarge and against *Miller personally* as a matter of law." (Emphasis added.)

The Eastern District recently outlined the following applicable law in *Capitol Group, Inc. v. Collier,* 365 S.W.3d 644, 648 (Mo.App. E.D.2012):

The general rule regarding liability incurred by an individual who signs an instrument on behalf of a principal is that the principal is liable, and not the individual, where the principal is disclosed and the capacity in which the individual signs the contract is evident. *Headrick Outdoor, Inc. v. Middendorf,*

1. Tiger does not appeal the judgment entered against it in this appeal; thus, the only question presented for review is whether the trial court erred in entering judgment against Miller.

907 S.W.2d 297, 300 (Mo.App. W.D.1995) (*citing Wired Music, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466, 468 (Mo. App.1977)). We presume "that it was the agent's intention to bind his principal and not to incur personal liability, and an agent will not be bound personally, except upon clear and explicit evidence of an intention to be bound." *Wired Music*, 554 S.W.2d at 468.

When considering whether a signatory to a contract intended to sign the agreement in his corporate or individual capacity, the determinative question is whether, "in view of the form of the signature to the agreement, the language of the so called guaranty clause is sufficient to manifest a clear and explicit intent by [the signatory] to assume a personal guaranty contract." *Wired Music*, 554 S.W.2d at 468; *see also Cardinal Health 110, Inc. v. Cyrus Pharmaceutical, LLC*, 560 F.3d 894, 899 (8th Cir.2009) (applying Missouri law). *Accordingly, our courts have adopted the policy that "in order to hold a corporate officer individually liable in signing a contract of guaranty . . . the officer should sign the contract twice [,] once in his corporate capacity and once in his individual capacity." Wired Music*, 554 S.W.2d at 470–71. *By signing the contract twice, the officer executing the contract for his corporation clearly manifests his intent to assume personal liability. Id.* *Id.* (emphasis added). While our caselaw does not hold that the only way an agent can be liable under a guaranty of this nature is by signing twice, this is the preferred method because it "clearly manifests his intent to assume personal liability."

■ Here, the facts are even more attenuated because an agent (Deason) signed (stamping) the name of the corporate officer (Miller) to bind the principal (Tiger). It is undisputed that Miller's name was signed only once on the Agreement, not twice, and that was by stamp rather than an original signature. Nowhere did Miller's stamped signature indicate the capacity in which it was affixed (i.e. corporate president of Tiger, as opposed to his individual capacity). It was not disputed in the trial court that the signature in fact was not Miller's personal signature, but rather was a rubber stamp of his signature and that Miller never saw or read the agreement. Therefore, based on these facts, there remains a disputed factual issue as to whether there was clear evidence appearing from the document itself that Miller intended to be personally bound to the Agreement. *Capitol Group, Inc. v. Collier*, 365 S.W.3d at 648.

■ Lafarge points to the language of the guaranty provision of the Agreement (outlined above), and states that it is unambiguous in that "it binds the signatory personally as a guarantor." But, the touchstone analysis in this area of the law is that "an agent will not be bound personally, *except upon clear and explicit evidence of an intention to be bound." Id.* (citing *Wired Music*, 554 S.W.2d at 468).

It is Miller's contention that the rubber stamp signature was used by an employee of Tiger to sign the Agreement, and that Miller never gave this employee the authority to sign documents to bind him in his personal capacity. Lafarge admitted below that the "signature" on the agreement is obviously a stamp. Lafarge makes no allegation that Miller had any contact with them, made any statement to them orally or in writing or did anything personally to evidence his clear intent to be individually bound by the agreement.

■ Lafarge contends that this Court need not concern itself with such facts

because "[e]ven if Miller's employee did not have actual authority to sign his name in his individual capacity, she certainly had apparent authority to bind Miller under the facts of this case." To support this contention, Lafarge cites to *K & G Farms v. Monroe County Service Co.*, 134 S.W.3d 40, 43 (Mo.App. E.D.2003), for the following proposition: "Where a principal holds out a person as possessing certain authority and others believe such authority exists, an agent has apparent authority to act even if the principal has not expressly granted the agent that authority." *Id.* But what Lafarge fails to consider is that "[a]pparent authority results from a *direct communication* from the principal to a third party." *Id.* (emphasis added); *see also Hamilton Hauling, Inc. v. GAF Corp.*, 719 S.W.2d 841, 846 (Mo.App. W.D.1986). Here, Lafarge made no allegation that it ever had a direct communication with Miller of any kind; to the contrary, in the motion for summary judgment Lafarge admitted the assertion by Miller "[t]hat the 'signature' thereon is obviously a stamp," thereby evidencing an indirect communication by Tiger's agent, at best.

Finally, Lafarge points to *no* Missouri case in which a court has found, on a summary judgment motion, that an *employee* of a corporation could bind an officer of that corporation in his personal capacity, via the employee's apparent authority, on a guaranty agreement. In looking at the Agreement in question it is clear that *Tiger* was the party that entered into the agreement with Lafarge. Indeed, in its summary judgment motion, Lafarge alleges in its statement of undisputed facts that *"Tiger* did not pay certain invoices" and that *"Tiger* owed Lafarge $146,110.22." (Emphasis added.) Accordingly, Lafarge's claim against Miller is predicated solely on a "contract of guaranty."

The problem with Lafarge's summary judgment motion is that it failed to demonstrate that there were no material facts in dispute as it pertains to the first requisite element of this contract of guaranty claim: "To recover on a contract of guaranty, the creditor must show (1) that the defendant executed the guaranty ..." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993).

Here, under these facts, where it is not shown that Miller personally executed the guaranty and not shown that he personally did anything to suggest to Lafarge that he intended or consented to enter into a personal guaranty contract, a rubber stamp of a signature does not, by itself, clearly and explicitly evidence an intention to be bound. *Capitol Group, Inc. v. Collier*, 365 S.W.3d at 648.

Had it been undisputed below that Miller personally signed the document by his own hand, we might agree that the language contained with the four corners of the Agreement may have been sufficient to bind him to the guaranty contract. *See Warren Supply Co. v. Lyle's Plumbing, L.L.C.*, 74 S.W.3d 816, 821 (Mo.App. W.D. 2002) (Where officer did not disclose his principal *"when he signed the guaranty,"* no ambiguity existed in regard to the personal guaranty, and no parol evidence would be received.)(emphasis added). However, those are not the facts of this case. Whether the employee of the company who placed the signature stamp on the document had either actual or apparent authority to bind Miller individually, is a disputed fact.

On appeal, Lafarge points to the fact that "[i]t commonly has been held that parol evidence is admissible to show whether a guaranty of a corporation's obligation was signed in an officer's representative or individual capacity, where, but

only where, the guaranty instrument is ambiguous on the question." *United Savings & Loan Assoc. v. Lake of the Ozarks Water Festival, Inc.*, 805 S.W.2d 350, 356, n. 4 (Mo.App. S.D.1991). Here, there is ambiguity based on Lafarge's own admission that the signature on the agreement was "obviously a stamp." Absent undisputed evidence that Miller took some action that clearly evidenced his intent to be personally liable for this debt, such as a phone call, e-mail, letter or fax to Lafarge indicating his intent to be personally bound, there is an unresolved factual issue which makes this case inappropriate for summary judgment.

Lafarge fails to even attempt to address this issue. It relies solely on the language of the contract to show Miller's intent to be personally bound, but admits that it can't even establish that Miller ever saw, much less read the agreement. Here, the "burden was on [Lafarge] to demonstrate that there were no genuine issues of material fact. That burden was not met and the trial court erred in sustaining their motion for summary judgment." *United Sav. & Loan Ass'n*, 805 S.W.2d at 357.

Point One is granted.

### Conclusion

The judgment of the circuit court against Miller is hereby reversed and the cause is remanded for further proceedings. The judgment against Tiger has not been appealed and is not impacted by this opinion.

All concur.